UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEPHEN ROST and SUSAN ROST, | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 15-3254 |
| v. | : | OPINION |
| AVELO MORTGAGE, LLC; GOLDMAN | : | |
| SACHS BANK USA; LITTON LOAN | | |
| SERVICING, LP; OCWEN FINANCIAL | : | |
| COMPANY, LLC; WILMINGTON | | |
| SAVINGS FUND SOCIETY, FSB DBA | : | |
| CHRISTIANA TRUST AS TRUSTEE FOR | | |
| HLSS MORTGAGE MASTER TRUST, | : | |
| Defendants. | : | |

This matter is before the Court on motions to dismiss the Complaint
filed by Defendants (1) Litton Loan Servicing LP; Ocwen Financial
Corporation; and Wilmington Savings Fund Society, FSB d/b/a Christiana
Trust as Trustee for HLSS Mortgage Master Trust [Doc. 11][1]; and (2) Avelo
Mortgage, LLC; and Goldman Sachs Bank USA[2] [Doc. 15].  The Court heard
oral argument on the motions on November 3, 2015 and the record of that
proceeding is incorporated here.  For the reasons expressed on the record
and those set forth below, Defendants' motions will be granted.

_____

[1] Wilmington Trust is the trustee of a REMIC securitization trust which is
the beneficial owner of the loan at issue in this case.  (Compl. p. 2, ¶ 5.)
[2] Defendant Goldman Sachs Bank USA has been alleged to have been the
parent of wholly owned subsidiaries Defendants Avelo Mortgage, LLC and
Litton Loan Servicing LP.

Background

Plaintiffs Stephen and Susan Rost own their residence at 133 Sunnyside Lane, Bellmawr, New Jersey.  They allege that Defendants wrongfully denied them a mortgage modification in violation of their contractual obligations under the United States Treasury's Home Affordable Modification Program (HAMP).[3]

Plaintiffs took out a loan on February 12, 2008 in the amount of $201,985, and executed a promissory note to secure that debt in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Defendant Avelo Mortgage, LLC d/b/a Senderra Funding, its successors and assigns. (Slipakoff Decl., Ex. A.)  The promissory note was secured by a mortgage signed by Plaintiffs, which was secured by the Sunnyside Lane property. (Slipakoff Decl., Ex. B.)

In January 2011, Plaintiffs became unable to make their monthly mortgage payments.  (Compl. p. 23, ¶ 45.)  On July 22, 2011, Avelo assigned the Plaintiffs' note and mortgage to Defendant Litton Loan Servicing LP. (Slipakoff Decl., Ex. C.)

_____

[3] Plaintiffs generally allege that Defendants Litton and Ocwen received money from the Troubled Asset Relief Program (TARP) and agreed to participate in HAMP by executing its Servicer Participation Agreement. (Compl. p. 13, ¶¶ 8-10.)  Further, as part of the sale of Litton to Ocwen, in August 2011, Ocwen signed an Agreement on Mortgage Servicing Practices with the New York State Banking Department.  (Compl., Ex. A.)

In August 2011, Plaintiffs contacted Litton because they were unable to make their mortgage payment, but wanted to keep their home.  (Compl. p. 23, ¶ 46.)  Litton offered Plaintiffs a "Repayment Plan Agreement," whereby Plaintiffs allegedly were immediately to wire $4,000.oo to Defendant Litton and thereafter make monthly payments of $2,674.39 for a year to bring their mortgage current.  (Compl. p. 23, ¶ 48.)  Plaintiffs allege that the upfront payment required was prohibited by HAMP.  (Id.)  Also allegedly prohibited was a $1,040 charge to Plaintiffs for servicer advances including "attorney fees and costs, property preservation expenses, inspections and other expenses."  (Compl. p. 24, ¶ 50.)  Plaintiffs next allege that Litton "lost" the $4,000 they wired via Western Union on August 2, 2011 in attempt to comply with the Repayment Plan Agreement.  (Compl. p. 24, ¶ 51.)[4]

On or about October 4, 2011, Plaintiffs received acknowledgement of receipt and processing of their application for modification.  (Compl. p. 24, ¶¶ 53-54.)  They also received notice naming their "relationship manager" as Jason Bravada, who allegedly instructed Plaintiffs via telephone conference to refrain from making mortgage payments while their loan

---

[4] In opposing the instant motions, Plaintiffs have produced a Western Union form dated August 2, 2011, for $4,000 to be sent to Litton, Texas. (Guice Decl., Ex. A.)

3

modification was being processed.  (Compl. pp. 24-25, ¶¶ 55-56.)  Further
e-mail inquiries regarding the pending loan modification allegedly went
unanswered.

In response to their February 2012 follow-up letter, Plaintiffs
allegedly were instructed again to file for a loan modification, which they
did on March 13, 2012 with a new relationship manager, Grayson Johnson.
On July 16, 2012, Litton assigned the Plaintiffs' note and mortgage to
Defendant Ocwen Loan Servicing, LLC.  (Slipakoff Decl., Ex. D.)  Plaintiffs
also contend that on March 11, 2013, a Kayla Frost was assigned as their
relationship manager,[5] but on March 31, 2014, they were informed that
Frost was no longer with Ocwen, so Christina Hernandez would be their
new relationship manager.  On April 23, 2014, Plaintiffs' counsel sent a
letter to Hernandez inquiring about the status of the loan modification,
(Compl., Ex. B), but allegedly received no response.  Plaintiffs allege that
they "have continually been strung along by Defendants with no guidance
whatsoever."  (Compl. p. 27, ¶ 69.)  Plaintiffs' loan modification request
ultimately was denied. (Compl. p. 27, ¶66.)

---

[5] In opposing the motions to dismiss, Plaintiffs state that they submitted a
third completed loan modification package on March 28, 2013.  (Pl. Br., p.
11; Guice Decl., Ex. B.)

On July 30, 2014, Ocwen assigned Plaintiffs' note and mortgage to Defendant Wilmington Savings Fund Society, FSB d/b/a Christiana Trust as Trustee for HLSS Mortgage Master Trust.  On April 2, 2015, Wilmington served a foreclosure complaint on Plaintiffs.  (Guice Decl., Ex. D.)

Plaintiffs filed the Complaint in this matter on April 13, 2015 in the Superior Court of New Jersey, Law Division, Camden County.  Defendants removed the case here based on diversity of citizenship jurisdiction.  Count I of the Complaint asserts Breach of Contract/Breach of Duty of Good Faith and Fair Dealing in that Plaintiffs were third party beneficiaries of the Agreement between Defendants and the United States Treasury executed as part of HAMP procedures in order that Defendants could continue to receive federal funding.  Plaintiffs allege that Defendants were obligated to advise Plaintiffs of their right to seek loan modification once they were sixty or more days in default of their mortgage loan, but failed to do so resulting in an unjust enrichment.  Plaintiffs assert that Litton's, GSB's, and Ocwen's breach of the Agreements with the federal government and New York State caused them damages including payment of increased interest, longer loan payoff times, higher principal balances, etc.[6]

---

[6] "Plaintiffs at all times material hereto were third party beneficiaries of the SPA between Defendants and United States Treasury and/or Agreement between Defendants and State of New York. . . . Defendants failed to perform their duties owed to the third party beneficiaries, under the terms

Count II claims Promissory Estoppel, in the alternative, in that Defendants should not prevail because their representative advised Plaintiffs to stop making mortgage payments for their modification application to be approved, and Defendants further ignored Plaintiffs' telephone calls and follow-up emails.[7]  Count III asserts violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1.[8]  Count IV alleges negligent hiring, improper training, and vicarious liability.[9]

---

of the contract. . . . As a result of Defendants, Litton, GSB and Ocwen's breach of the SPA and Agreement, Plaintiffs have suffered and will continue to suffer reasonable and foreseeable consequential damages resulting from such breaches[.]" Compl. pp. 28-30, ¶¶ 2-3, 13.

[7] "Defendants by way of their participation in the HAMP program made a representation to plaintiffs that they could be saved from foreclosure or other legal proceedings regarding their home. . . . Plaintiffs relied upon the statements of Defendants, Litton, Ocwen and GSB, individually, jointly, severally and in the alternative, that they would abide by the mandates set forth by the United States Treasury and State of New York Department of Banking." Compl. p. 30-32, ¶ 2, 9.

[8] Plaintiffs cite Defendants' "practice of leading borrowers to believe that defendants would offer loan modifications as required under HAMP" and state "Plaintiffs have suffered an actual and ascertainable loss of money or other property . . . including but not limited to: payment of increased interest, longer loan payoff times, higher principle balances, deterrence from seeking other remedies to address their default and/or unaffordable mortgage payments, damage to their credit, additional income tax liability, costs and expenses incurred to prevent or fight foreclosure and other damages." Compl. p. 34-35, ¶¶ 4, 6.

[9] "At all times material hereto, Defendants were required under the SPA and Agreement to: 'ensure that employees and managers engaged in loan servicing, collection, loss mitigation, foreclosure prevention and foreclosure processing and/or proceedings participate in a compliance training program.' . . . At all times material hereto, Defendants failed to properly train their employees as required." Compl. pp. 35-36, ¶¶ 2-3.

Applicable Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim.  Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[1]  See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).  It is not necessary for the plaintiff to plead evidence.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  The question before the Court is not whether the plaintiff will ultimately prevail.  Watson v. Abington Twp., 478 F.3d 144, 150 (2007).  Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

---

[1]"Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).  Accord Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citations omitted).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to

---

[2]This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" Id.

8

dismiss.")).  Accord Iqbal, 556 U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth). Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal citations omitted).  See also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Analysis

As an initial matter, the Court notes that no facts have been alleged against Avelo to support any claim against it.  In addition, GSB is implicated only as parent of Litton, but no allegations form the basis for piercing the corporate veil to hold GSB liable for actions of its former subsidiary.[10]  Therefore, the motion of these two Defendants will be granted for these independent grounds from those articulated next.

Plaintiffs' first claim must fail because there is no private right of action to enforce compliance with HAMP.  Sinclair v. Citi Mortgage, Inc., 519 Fed. App'x 737, 738 (3d Cir. 2013); In re O'Biso, 462 B.R. 147, 151 (D.N.J. 2011) (citing Stolba v. Wells Fargo & Co., No. 10-cv-6014, 2011 WL 3444078, D.N.J. Aug. 8, 2011)).  With regard to the HAMP Servicer Participation Agreement, this Court has held that an "SPA does not provide a vehicle for creating a cause of action under the HAMP: 'the HAMP Guidelines, effectuated through the servicer's execution of the SPA, may not be enforced by a mortgagee under a third party beneficiary theory.'"  Shaffery v. Bank of Am., N.A., No. 14-cv-6123, 2015 WL 1189622, at *1

---

[10] "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." U.S. v. Bestfoods, 524 U.S. 51, 61 (1998). It follows that "[m]ere ownership of a subsidiary does not justify the imposition of liability on a parent." Pearson v. Component Technology Corp., 247 F.3d 471, 484 (3d Cir. 2001).

(D.N.J. Mar. 16, 2015) (quoting Thomas v. U.S. Bank Nat'l Ass'n, 474 B.R. 450, 459 (D.N.J. 2012)).

Plaintiffs also are not third-party beneficiaries of the Mortgage Practices Agreement.  Under New Jersey law, to be a third-party beneficiary the contracting parties must have "intended others to benefit from the existence of the contract," it is insufficient that "the benefit so derived arises merely as an unintended incident of the agreement."  See Broadway Maintenance Corp. v. Rutgers, the State University, 447 A.2d 906, 909 (N.J. 1982). If a contract is silent, the court must look to the surrounding circumstances and the relevant provisions in the agreement to determine that intent.  Id.  If no such intent is found, the third person is merely an incidental beneficiary without contractual standing to bring a claim. Id. The Mortgage Practices Agreement here was entered into three years after the origination of Plaintiffs' mortgage.  There is no mention in the Mortgage Practices Agreement of third party beneficiaries or a private right of action to mortgagors.  Plaintiffs are at best incidental beneficiaries of the Mortgage Practices Agreement, which does not give them enforceable rights under that agreement.

Further, Even if Plaintiffs possessed third-party beneficiary status, their claim would still fail because there is no guaranteed right to a loan modification under HAMP.  See Stolba, 2011 WL 3444078, at *3 ("the plain

11

language of the relevant TPP documents makes clear that satisfying the TPP conditions for permanent modification does not guarantee that Plaintiff would receive such modification").  A borrower has no right to unilaterally demand a loan modification from a lender.  O'Biso, 462 B.R. at 151.

Plaintiffs argue in opposition to the motions to dismiss that their breach of contract/implied covenant of good faith and fair dealing claim is based upon breach of covenants contained in the original note, in that (1) Defendant Litton lost and/or failed to apply a $4,000 payment to the principal and interest of the original note and (2) Defendants intentionally misled Plaintiffs for over three years regarding their application for a loan modification [that the modification would be granted] to drive up costs associated with the original note and build principal and interest.  (Pl. Br., p. 14, 17.)  "'It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted); accord Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007) ("we do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)").

Next, to establish a claim for promissory estoppel, Plaintiffs must show: (1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3)

the promisee must in fact reasonably rely on the promise, and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise. <u>Malaker Corp. Stockholders Protective Committee v. First Jersey Nat'l Bank</u>, 395 A.2d 222, 230 (N.J. Super. Ct. App. Div. 1978). Plaintiffs may have been told that they would be considered for a loan modification if they adhered to the terms of the proposed Agreement and refrained from making regular payments. Plaintiffs were not *guaranteed* a loan modification, and Defendants were under no obligation to grant them one. Therefore, it would have been unreasonable for Plaintiffs to rely on any such statement as a promise, and this is not a sufficient basis for Plaintiffs' promissory estoppel claim.

To state a valid claim for a violation of the NJCFA, a plaintiff must allege each of the following elements: "'(1) unlawful conduct by the defendant; (2) an ascertainable loss on the part of the plaintiff;[11] and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss.'" <u>Weinberg v. Sprint Corp.</u>, 173 N.J. 233, 250 (2002). <u>See</u> <u>also</u> <u>Maniscalco v. Brother Int'l Corp.</u>, 627 F. Supp. 2d 494, 499 (D.N.J. 2009).

---

[11] An ascertainable loss is a loss that is "quantifiable or measurable"; it is not "hypothetical or illusory." <u>Lee v. Carter-Reed Co., LLC</u>, 203 N.J. 496, 522 (2010); <u>see</u> <u>also</u> <u>Barows v. Chase Manhattan Mortgage Corp.</u>, 465 F. Supp. 2d 347, 353 (D.N.J. 2006).

As stated above, Plaintiffs do not have standing to bring a claim under HAMP.  Further, neither HAMP nor the Mortgage Practices Agreement guarantees any mortgagor the "right" to modification.  Finally, Plaintiffs have not alleged an ascertainable loss that they actually suffered which was caused by any Defendant's conduct, rather than by their own default.

Regarding the negligence claim, Plaintiffs must show: (1) a duty of care; (2) breach of that duty; (3) proximate cause; and (4) actual damages. Ramirez v. U.S., 81 F. Supp. 2d 532, 540 (D.N.J. 2000).  Under New Jersey law, "[t]he question of whether a duty exists is a matter of law properly decided by the court, not the jury, and is largely a question of fairness or policy." Wang v. Allstate Ins. Co., 125 N.J. 2, 15 (1991).

The economic loss doctrine bars claims for negligence between parties to a contract.  SRC Const. Corp. of Monroe v. Atl. City Hous. Auth., 935 F. Supp. 2d 796, 800 (D.N.J. 2013).  "Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law. . . . But mere failure to fulfill obligations encompassed by the parties' contract, including the implied duty of good faith and fair dealing, is not actionable in tort." Skypala v. Mortgage Elec. Registration Sys., Inc., 655 F. Supp. 2d 451, 460 (D.N.J. 2009).  Without an independent duty imposed by law, Plaintiffs' negligence claim is barred.

Plaintiffs will be granted leave to file a Motion to Amend the Complaint within 20 days insofar as they wish to assert claims not considered here or claims that would not be barred by the legal holdings the Court has made herein.  See Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) (providing that plaintiffs whose claims are subject to a Rule 12(b)(6) dismissal should be given an opportunity to amend their complaints unless amendment would be inequitable or futile).

An appropriate Order will be entered.


Dated: November 3, 2015                    /s/ Joseph H. Rodriguez
                                          JOSEPH H. RODRIGUEZ
                                                  USDJ


15