# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEPHEN ROST and SUSAN ROST, | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 15-3254 |
| v. | : | **OPINION** |
| LITTON LOAN SERVICING, LP and OCWEN FINANCIAL CORPORATION, LLC, | : | |
| Defendants. | : | |

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Litton Loan Servicing LP and Ocwen Financial Corporation (collectively "Defendants") [Dkt. No. 75]. Having considered the parties' submissions, the Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated below, the Court will grant Defendants' Motion for Summary Judgment.

## I.  Background[1]

Plaintiffs Stephen and Susan Rost own their residence at 133 Sunnyside Lane, Bellmawr, New Jersey. Defendants are the Plaintiffs' mortgage servicers. On February 12, 2008, Plaintiffs took out a loan in the amount of $201,985, and executed a promissory note to secure that debt in favor of Mortgage Electronic Registration Systems, Inc., as nominee for Avelo Mortgage, LLC d/b/a Senderra Funding, its successors and assigns. (Def. SMF ¶ 2). The promissory note was secured by a mortgage

---

[1] The Court reincorporates the relevant factual background laid out in its earlier Opinion in this matter granting Defendants Motion to Dismiss, in Rost v. Avelo Mortgage, LLC , No. 15-3254 (D.N.J. Nov. 3, 2015), for the benefit of the reader.

1

signed by Plaintiffs, which was secured by the Sunnyside Lane property; both the mortgage and note were ultimately assigned to Defendant Litton. (Id. at ¶¶ 3-4).

In January 2011, Plaintiffs became unable to make their monthly mortgage payments. (Id. at ¶ 6). In an effort to keep their home, Plaintiffs contacted Litton in August 2011 regarding ways to bring their mortgage current. (Id. at ¶ 7). Litton offered Plaintiffs a "Repayment Plan Agreement" ("RPA"). According to the RPA, to make the agreement effective Plaintiffs were required to (1) wire $4,000.00 to Defendant Litton by August 4, 2011; and (2) immediately sign and return the RPA to Litton. [Dkt. No. 77-3, Ex. C]. Thereafter, Plaintiffs were to make monthly payments of $2,674.39 for one year to bring their mortgage current. (Id.) If Litton did not receive both items, the RPA would be deemed null and void (Id.) "Plaintiffs wired the $4,000.00 via Western Union on August 2, 2011 . . . . The money was sent using Western Union's 'Urgernt' services." (Amend. Compl. ¶18; Def. SMF ¶ 17). The parties dispute what happened to Plaintiffs $4,000 payment. Plaintiffs allege that Litton has failed to acknowledge the $4,000 payment, wired to it via Western Union to comply with the Repayment Plan Agreement. [Dkt. No. 41 p. 12 ¶ 6]. According to Defendants', the payment was received on August 8, 2011 and applied to their account. (Def. SMF ¶ 20). The parties also dispute the execution and receipt of the signed RPA. Plaintiffs claim that they faxed the signed agreement to Litton on or about August 9, 2011, while Defendants allege that they never received an executed copy of the RPA. (Def. SMF ¶ 24 and Pl. Resp. ¶ 24). According to Plaintiffs, they "constantly" inquired about their $4,000 payment and never received a second RPA, as suggested by Defendants. [Dkt. No. 85-1 ¶ 28].

On August 15, 2011, Litton notified Plaintiffs that their mortgage and note was being transferred to Ocwen Loan Servicing, LLC ("OLS"), the subsidiary of Defendant

Ocwen. (Def. SMF ¶ 26). Due to a series of unfortune events, Plaintiffs sent OLS a hardship letter on September 19, 2011 detailing the reasons for their default and requesting loan modification of their monthly payment amount. (Def. SMF ¶ 37). Thereafter, Plaintiffs were given the option to modify their loan. On or about October 4, 2011, Plaintiffs received acknowledgement of receipt and processing of their application for modification (the "first modification application"). [Dkt. No. 41, p. 8, ¶¶ 27]. They also received notice naming their "relationship manager" as Jason Bravada, who allegedly instructed Plaintiffs via telephone conference to refrain from making mortgage payments while their loan modification was being processed. (Id. at ¶¶ 28). OLS notified Plaintiffs that their first modification application was missing certain required documents, and instructed Plaintiffs to submit those documents by November 1, 2011. = Plaintiff supplied the documents on November 22, 2011. [Dkt. No. 77-11, Ex. K]. According to Plaintiffs, they did not receive any further communications regarding their first modification application.

 Plaintiffs state that they were ultimately instructed to file for a second loan modification by April 6, 2012, and did so on March 13, 2012 with a new relationship manager, Grayson Johnson. [Dkt. No. 85-1 ¶ 44]. In October 2013, Plaintiffs received another request to submit a loan modification application. In February 2013, Plaintiffs sent this third modification application for consideration. Plaintiff received no response concerning either of their previous loan modification applications (Id. at ¶ 64; Dkt. No. 41, p. 9 ¶ 32). Plaintiffs again were reassigned to a different relationship manager, Kayla Frost. [Dkt. No. 41, p. 9, ¶34]. When Plaintiffs continued to reach out to Ocwen regarding the status of their applications, they claim Ocwen ignored them, and

eventually told to file another application for modification. Ultimately, Plaintiffs' third modification package was denied. (Id. at p. 10 ¶ 37).

Plaintiffs filed the Complaint in this matter on April 13, 2015 with the Superior Court of New Jersey, Law Division, Camden County. Defendants removed the case here based on diversity of citizenship jurisdiction. On June 30, 2015, Defendants filed a Motion to Dismiss Plaintiffs initial Complaint. In an Opinion dated November 3, 2015, this Court dismissed Plaintiffs' complaint and a number of named Defendants affording the Plaintiffs right to amend. [Dkt. No. 25, 25]. Plaintiffs' first motion to amend their complaint was granted in part and denied in part by the Honorable Magistrate Judge Joel Schneider. [Dkt. No. 28]. Judge Schneider later granted Plaintiffs' second motion to amend their complaint. [Dkt. No. 37]. Plaintiffs' filed their Amended Complaint against Litton and Ocwen with the Court in September 2016. [Dkt. No. 41].

The Amended complaint alleges breach of contract/good faith and fair dealing against Defendant Litton (Count I) in the alternative, Promissory Estoppel against Defendant Litton (Count II); and violation of the New Jersey Consumer Fraud Act ("NJCFA") against Defendants Litton and Ocwen (Count III). After conducting Discovery, Defendants filed a Motion for Summary Judgment seeking dismissal of all Counts alleged in Plaintiffs' Amended Complaint. [Dkt. No. 75]. The motion has been fully briefed and is ripe for decision.

## II. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986));

4

accord Fed. R. Civ. P. 56 (a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. Analysis

**A. Count I: Breach of Contract against Defendant Litton**

Plaintiff's breach of Contract claim is based on the RPA, which they contend is a valid contract between themselves and Litton. Plaintiffs allege that Litton breached that contract by failing to acknowledge the receipt of their $4,000 payment, required by the RPA. [Dkt. No. 41, Count I]. Defendants move for summary judgment seeking dismissal of Plaintiffs' breach of contract claim arguing that (1) no enforceable contract existed between the parties; and (2) even if there was a contract, Litton did not breach it.

Under New Jersey law, there are four elements plaintiff must establish to prevail on a breach of contract claim: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, Inc., 507 F.3d

6

188, 204 (3d Cir. 2007). The first issue to be decided is whether there was a contract between the parties in this case. Here, it is undisputed that Litton offered Plaintiffs a repayment plan, known as the RPA. The RPA established a new monthly payment schedule to bring Plaintiffs current on their loan. In order to accept the RPA, thereby making it effective, Plaintiffs were required to (1) wire $4,000.00 to Defendant Litton by August 4, 2011; and (2) immediately sign and return the RPA to Litton. [Dkt. No. 77-3, Ex. C]. If Litton did not receive both items, the Plan would be deemed null and void. (Id.) Litton claims that it never received an executed copy of the RPA from Plaintiff's and therefore, there was no enforceable contract, the agreement was deemed null and void. [Dkt. No. 75-2 at 5]. Plaintiffs, however, dispute this fact and allege that they immediately signed the RPA upon receipt and faxed it back to Litton.

The record establishes that Litton sent the RPA to Plaintiffs on August 4, 2011 and Plaintiffs signed the document on August 9, 2011. [Dkt. No. 82-1, Ex. C]. There is no evidence that the signed document was or was not faxed to Litton. Instead, the Court is left solely with the conflicting testimony of the parties—Plaintiffs' testimony that they faxed the signed agreement to Defendant Litton, and testimony from Litton's representatives stating they never received it. While Defendants are correct, in that Plaintiffs fail to provide sufficient evidence to create a presumption that Litton received the executed RPA, it is the fact finders role to determine credibility and therefore, the Court cannot determine whether Litton received the RPA from Plaintiffs.

Notwithstanding, even if there were a valid contract between the parties the Court finds as a matter of law that there was no breach. Here, Plaintiff alleges that Litton has not accounted for its $4,000 payment and such failure constitutes a breach of its contract. Though the parties dispute when Plaintiffs' payment was received, they do not

7

dispute that the payment was made. Defendant Litton agrees that Plaintiffs wired the $4,000, which it claims it received on August 8, 2011. Plaintiffs stress that Western Union should have delivered the August 2nd payment within hours but provide no evidence that the payment was, in fact, delivered prior to August 8, 2011. Defendant asserts that it then applied the $4,000 to Plaintiffs' account, which is reflected in its August 15, 2011 billing statement. (Def. SMF ¶ 25). According to that statement, $4,000 was credited to the Plaintiffs' loan balance by way of three separate payments, which brought Plaintiffs' loan forward from the January 1, 2011 contractual due date to the March 1, 2011 due date. [See Dkt. No. 83-3, Ex. E]. Mr. Rost testified that he received monthly statements from Litton—like the August 15th statement—but claims he had never seen the August 15th statement before. (Rost. Dep. 14). Mr. Rost also testified that he had no reason to believe that the statement Litton produced was not the August 15, 2011 billing statement.

Plaintiffs do not dispute that Litton's bill accounted for the $4,000 payment. Instead, Plaintiffs contest that the $4,000 was credited to their account with Litton because Ocwen produced payment logs inconsistent with Litton's. It is not clear from the record, however, that there was such an inconsistency, or that any inconsistency proves Litton failed to credit Plaintiffs' payment. The August Billing statement from Litton requires a September 1 payment and provides a total of $13,110.20 due, which increased to $13,186.87 if the September payment was late. [Dkt. No. 83-3, Ex. E]. Ocwen produced a log, dated September 9, 2011, showing a total amount of $17,067.22 due on Plaintiffs' account as of September 7, 2011. Though Ocwen's account statement shows an amount of $17,067.22 due, this statement was for an October 1 payment. The log also reflected Plaintiffs' contractual due date as March 1, 2011. Plaintiffs do not point

to any other documentation suggesting their $4,000 is "lost" and therefore, has not produced sufficient evidence creating a genuine factual dispute that the $4,000 was lost.

Moreover, the Plaintiffs do not dispute that by agreeing to the RPA, they promised to repay all delinquent amounts owed on their account, as well as all amounts due during the effective RPA. In return, Litton would not pursue a foreclosure action against Plaintiffs, so long as they continued to make scheduled payments. Plaintiffs admit that they did not make any payments due pursuant to the plan. Furthermore, Defendants did not foreclose on Plaintiffs' home within the time period that the RPA would have been effective for, or soon thereafter. Therefore, the Court will grant summary judgment in Defendant Litton's favor as to Count I of the Amended Complaint.

B. **Count II: Promissory Estoppel against Defendant Litton**

As an alternative to their breach of contract claim, Plaintiffs bring a claim against Litton for promissory estoppel. Plaintiffs' Amended Complaint asserts the same factual basis for this claim as they do under Count I for breach of contract—asserting Plaintiff relied on Litton's representation that if they sent it $4,000, Plaintiffs would make payments under the RPA and upon completion be current on their mortgage. [Dkt. No. 41, Count II]. To establish a claim for promissory estoppel, Plaintiffs must show: (1) a clear and definite promise by the promisor; (2) the promise must be made with the expectation that the promisee will rely thereon; (3) the promisee must in fact reasonably rely on the promise, and (4) detriment of a definite and substantial nature must be incurred in reliance on the promise. Malaker Corp. Stockholders Protective Committee v. First Jersey Nat'l Bank, 395 A.2d 222, 230 (N.J. Super. Ct. App. Div. 1978). A claim for promissory estoppel is quasi-contractual and therefore, generally barred where there is a valid written contract.

Here, the Court has already determined that whether or not a contract between the parties exists, is a question of fact for a jury. But even if a fact finder were to conclude that no contract existed, Plaintiffs would have no viable claim for promissory estoppel. Plaintiffs' promissory estoppel claim fails for the same reason its breach of contract claim fails—lack of any genuine issue of material fact as to whether Plaintiffs' $4,000 was credited to their account with Litton.[2] Accordingly, the Court will grant summary judgment in favor of Defendants on Count II.

### C. Count III: NJCFA violations against Defendants Litton and Ocwen

To state a valid claim for a violation of the NJCFA, a plaintiff must allege each of the following elements: "'(1) unlawful conduct by the defendant; (2) an ascertainable loss on the part of the plaintiff;[3] and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss.'" Weinberg v. Sprint Corp., 173 N.J. 233, 250 (2002). See also Maniscalco v. Brother Int'l Corp., 627 F. Supp. 2d 494, 499 (D.N.J. 2009). Under the NJCFA, unlawful conduct includes, affirmative acts, knowing omissions, and regulation violations. Frederico, 507 F.3d at 202.

In their opposition briefs, Plaintiffs tend to meld together the actions of Litton and OLS to assert that Defendants "strung Plaintiffs along," and ultimately allege that "there is a clear violation of the Consumer Fraud Act in the [sic] Defendants misrepresented

---

[2] Plaintiffs' brief argues that Defendant Litton is liable under Count II based on a theory that Litton promised to allow the plaintiffs to apply and receive loan modification following completion of the RPA. [Dkt. No. 82 at 34]. Plaintiffs Amended Complaint, however, fails to plead such allegations. Plaintiffs cannot not, now, assert a new basis for this claim. Moreover, this Court previously held, in a motion to dismiss, that Defendants were under no obligation to grant them permanent loan modification and therefore, it would have been unreasonable for Plaintiffs to rely on any such statement as a promise, and this is not a sufficient basis for Plaintiffs' promissory estoppel claim.

[3] An ascertainable loss is a loss that is "quantifiable or measurable"; it is not "hypothetical or illusory." Lee v. Carter-Reed Co., LLC, 203 N.J. 496, 522 (2010); see also Barows v. Chase Manhattan Mortgage Corp., 465 F. Supp. 2d 347, 353 (D.N.J. 2006).

the permanent [loan] modification to Plaintiffs and made false promises and under false pretense." [Dkt. No 82 at 36; Dkt. No. 85 at 9-12].

1. *Defendant Litton*

In their Amended Complaint, Plaintiffs allege that Litton is liable under the NJCFA for failing to acknowledge the receipt of their $4,000 payment to Litton pursuant to an RPA. [Dkt. No. 41, Count III ¶ 6-7]. The remaining allegations in Count III deal with Defendant Ocwen. Having determined that Plaintiffs fail to create a genuine factual issue over whether their payment was applied to their account, the Court finds that Plaintiffs also fail to establish unlawful conduct under the NJCFA by Defendant Litton. Accordingly, the Court will grant Defendant Litton summary judgment on Plaintiffs' NJCFA claim.

2. *Defendant Ocwen*

Plaintiffs' NJCFA claim against Ocwen deals with their failure to answer Plaintiffs' multiple applications for loan modifications. Plaintiffs allege that Ocwen delayed a decision on their loan modification for close to two years as part of a pattern of deception and on false pretenses. [Dkt. No. 82 at 36]. Defendants first argue that Plaintiffs' claim fails because Ocwen had nothing to do with the servicing of their account because it is the parent company of Ocwen Loan Servicing, LLC, the owners of Plaintiffs' loan. According to Defendants, Ocwen Financial had no role in evaluating or considering Plaintiffs' requests for modification assistance; rather, at all times relevant, this was the responsibility of OLS, which serviced Plaintiffs' account. [Dkt. No. 76 ¶¶ 90-94].

There is no dispute that Defendant Ocwen is the parent company of OLS. [Dkt. No. 41, pg. 2, ¶ 3]. Although, Plaintiff does not differentiate between the parent and its

subsidiary, referring to both as "Ocwen," it is clear that OLS was servicing Plaintiffs' loan. The record establishes that all of Plaintiffs' communications regarding their loan and loan modifications were between them and OLS, and OLS account managers. [Dkt. No. 82-1, Ex ]. Plaintiffs' Amended Complaint [Dkt. No. 41] fails to name OLS as a Defendant in this case and Count III is explicitly asserted against Ocwen Financial.

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." U.S. v. Bestfoods, 524 U.S. 51, 61 (1998). It follows that "[m]ere ownership of a subsidiary does not justify the imposition of liability on a parent." Pearson v. Component Technology Corp., 247 F.3d 471, 484 (3d Cir. 2001). In the present case, Plaintiffs' do not offer any evidence, or argument for that matter, that the Court should pierce the corporate veil and hold Defendant Ocwen liable for the alleged acts of OLS. This Court previously dismissed Defendant Goldman Sachs Bank ("GSB") from this case, by way of its earlier Opinion, on the grounds that GSB was implicated solely as parent of Litton. There were no allegations to "form the basis for piercing the corporate veil to hold GSB liable for actions of its former subsidiary." Rost, 2015 WL 6737026, at *4. For that same reason, this Court finds that there is no basis for liability against Defendant Ocwen Financial and therefore, the Court will grant summary judgment in favor of Ocwen on Count III.

IV. Conclusion

For the forgoing reasons Defendants' Motion for Summary Judgment [Dkt. No. 75] seeking dismissal of Plaintiffs' Amended Complaint will be granted. Accordingly, judgment will be entered in favor of Defendants, Litton Loan Servicing LP and Ocwen Financial Corporation.

An appropriate Order will be entered.

Dated: January 13, 2020  /s/ Joseph H. Rodriguez

JOSEPH H. RODRIGUEZ, USDJ